IN THE UNITED STATES DISTRICT COURT FOR THE FILED
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 OCT -4 AM 10: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

```
In re:   MICHAEL J. O'DELL and    )
         LINDA A. O'DELL,         )   Bankruptcy Case
                                  )   No. 99-43337-13
                       Debtors.   )
==================================================================
ALANE A. BECKET, D. ALEXANDER     )
BARNES, and BECKET & LEE LLP,     )
                                  )
         Appellants,              )
                                  )
    v.                            )   CIVIL ACTION NO. 00-G-2935-E
                                  )
MICHAEL J. O'DELL and             )
LINDA A. O'DELL,                  )
                                  )
         Appellees.               )
```

ENTERED

OCT  4 2001



## MEMORANDUM OPINION

The case at bar is an appeal[1] from Bankruptcy Judge Sledge's

decision reported in *In re O'Dell*, 251 B.R. 607 (Bankr. N.D. Ala. 2000) in which

Judge Sledge made the following challenged rulings:

1)   Ruling that the proof of claim form filed by Max Flow Corp.
     [hereinafter Max Flow] was a misleading adaption of the
     official proof of claim form because it identified the creditor as
     "Max Flow on Behalf of MBNA America Bank, N.A.
     [hereinafter MBNA] and its Assigns," rather than "MBNA by

---

[1]   The claim at issue in this appeal was allowed by the Debtors' previous
confirmed plan.

Max Flow," or "MBNA through Max Flow," or "MBNA by means of Max Flow," or MBNA via Max Flow,"   *O'Dell*, 251 B.R. at 610-16;

2)   Ruling that Max Flow was not a creditor of the Debtors[2] and that Max Flow had filed false and misleading information with its proof of claim which indicated that Max Flow was the creditor, *Id.* at 616-18;

3)   Ruling that Max Flow's authority to act on behalf of MBNA was limited to filing proofs of claim, *Id.* at 620-21;

4)   Ruling that even if MBNA had granted Max Flow authority to defend the Debtors' objection to the proof of claim, such authority cannot be exercised because an agent cannot handle the legal affairs of a principal, *Id.* at 620-21;

5)   Ruling that Max Flow engaged in the unauthorized practice of law when it responded to the Debtors' objection to claim notwithstanding that Max Flow's response was through licensed counsel, *Id.* at 624-26;

6)   Ruling that Max Flow's former counsel facilitated its engaging in the unauthorized practice of law, *Id.*, at 625-26; and

7)   Ruling that the actions of Max Flow and its counsel were actionable, *Id.* at 626.

These rulings bring before the court in the case at bar the following

issues:

---

[2] Debtors in the instant case will always be referenced by use of the upper case: Debtors.

2

1) Whether an agent who is authorized by its principal to pursue and protect the interests of the principal's claim (which authority includes defending the claim in a bankruptcy proceeding and the hiring of attorneys) can lawfully defend an objection to said claim on behalf of the principal?

2) Whether the Bankruptcy Court[3] erred in its August 3, 2000, order in holding that Max Flow lacked either standing or the legal authority to defend a proof of claim it filed on behalf of MBNA and its assigns?

3) Whether Max Flow's conduct in defending the subject proof of claim constitutes unauthorized practice of law when all of Max Flow's activities before the Bankruptcy Court were conducted by an attorney?

4) Whether the Bankruptcy Court erred in its August 3, 2000, order holding that Max Flow's counsel facilitated Max Flow's engagement in the unauthorized practice of law?

5) Whether the conduct of Max Flow and its counsel in defending the proof of claim is sanctionable even if a court concludes that Max Flow did not have standing to defend the subject proof of claim on its own behalf or the legal authority to defend the claim on behalf on MBNA?

Prior to the institution of this bankruptcy suit Debtors filed Chapter 13 bankruptcy on September 29, 1997, [hereinafter 1997 Bankruptcy Case] in the same bankruptcy court. Thereafter, on December 8, 1997, Max Flow, on behalf of MBNA, filed a general unsecured claim in the amount of $4,489.15 for unpaid

---

[3] The *O'Dell* bankruptcy court will always be referenced by use of the upper case: Bankruptcy Court.

3

prepetition charges incurred on credit card account number 5329-0417520-06715

issued by MBNA. *In re O'Dell*, 251 B.R. 602, 614 (Bankr. N.D. Ala. 2000). This

is the claim to which debtors in the present bankruptcy case objected. The

Bankruptcy Court confirmed Debtors' plan in the 1997 Bankruptcy Case on

May 28, 1998, allowing the unsecured $4,489.15 claim. *O'Dell*, 251 B.R. at 611.

The 1997 Bankruptcy Case was dismissed October 26, 1999.

On November 12, 1999, Debtors filed the Chapter 13 bankruptcy case

underlying this appeal, along with a "Schedule F- Creditors Holding Unsecured

Non-Priority Claims [hereinafter Schedule F]," in which Max Flow was listed as a

creditor.[4] The related claim was $4,515.95. Debtors declared the schedules were

true and correct to the best of their knowledge.

On February 22, 2000, Max Flow filed a proof of claim (Claim

No. 15) for the debt associated with the O'Dell account: $4,489.15, identified as

"Max Flow Corp. On Behalf of MBNA America Bank, N.A. And Its Assigns."

On five different occasions the Debtors amended their Schedule F. Each time they

acknowledged the O'Dell account debt. Each time they acknowledged that Max

Flow had an interest in the claim. Claims set forth on Schedule F follow:

-----

[4] Max Flow was incorrectly listed as "MBNA America (Max Flor)."

| FILING DATE | CREDITOR | AMOUNT |
|---|---|---|
| February 14, 2000 | MBNA America (Max Flor) [sic] | $ 4,515.95 |
| May 4, 2000 | MBNA America (Max Flow) | $ 4,515.95 |
| May 15, 2000 | MBNA America (Max Flow) | $ 4,295.08 |
| June 1, 2000 | MBNA America (Max Flow) | $ 4,489.15 |
| June 7, 2000 | MBNA America (Max Flow) | $ 4,489.15 |

Max Flow is in the business of purchasing from credit card issuers accounts of consumer credit card holders who file Chapter 13 bankruptcy. Max Flow prospectively agrees with the issuer to purchase certain of the issuer's qualifying Chapter 13 accounts as they arise, with the purchase price being calculated on a percentage of the account balance as of the petition date. Actual transfer of an account from a seller to Max Flow may not occur immediately following the bankruptcy filing, but a short time later.[5] Where the account does not transfer immediately, upon notice of the Chapter 13 filing, Max Flow is engaged to handle the account until the account is actually transferred to insure that no bankruptcy filing dates are missed.

When the deadline to file a bankruptcy claim precedes the transfer of the account Max Flow files the claim identifying the creditor as "Max Flow on behalf of [issuer[ and its assigns." Nothing in the record indicates that Max Flow

---

[5] Transfer times normally take place based on the accounting procedures of sellers.

has intended to mislead, or has misled any debtor or Chapter 13 trustee.  Indeed,

the information furnished by Max Flow identifies itself, the ultimate assignee of

the claims, the issuer, and the initial holder of the debt.  The evidence clearly

shows that the Debtors, themselves, were not misled.  The five sworn separate

representations in their bankruptcy pleadings acknowledge Max Flow's interest in

the claim to which they objected.  *Supra* at 4.

  The dealings between MBNA and Max Flow with respect to the

purchases are governed by two agreements which have been extended by

agreement of the parties:  1)  a June 11, 1997, "Purchase Agreement for Forward

Flow Accounts [hereinafter **Purchase Agreement**];  and,  2) a June 11, 1997,

"Interim Servicing Agreement [hereinafter **Interim Agreement**]."

  By terms of the **Purchase Agreement** Max Flow contracted with

MBNA to purchase "each unsecured consumer credit card and line of credit

account serviced and charged-off by the Seller [MBNA] on or after the date hereof

during the Transfer Period ... with respect to which one of the Debtors has filed a

Chapter 13 Procedure during the Transfer Period."  By terms of the **Interim

Agreement** MBNA delegated to Max Flow the responsibility for administering

MBNA accounts purchased by Max Flow prior to transfer of those accounts to

Max Flow.  The **Interim Agreement** specified that Max Flow would use Becket & Lee to provide legal services for MBNA until such time as the account was transferred to Max Flow.

Although the Debtors' five sworn schedules represent that Max Flow has an interest in the claim, Debtors filed an objection to "Claim No. 15" on April 12, 2000, claiming that National Credit Service[6] was not a party in interest. At no time, however, in raising or pursuing the objection have Debtors denied owing the debt claimed by "Claim No. 15."

The objection was followed on May 5, 2000, by a "Response of Max Flow Corp. On Behalf of MBNA America, N.A., and its Assigns" by which Max Flow asserted it had authority to file claims on behalf of MBNA.  The reply included the **affidavit of Kevin Matyniak**, manager of the bankruptcy processing department for MBNA, in which he testified that MBNA had authorized Max Flow to file a claim on its behalf, MBNA O'Dell account number 6329-0417520-06715.[7]

---

[6] Presumably, Debtors intended to identify Max Flow instead of National Credit Service as the entity which allegedly was not a party in interest.

[7] Records show that at this time Max Flow owned the claim.  The attorneys failed to recognize its ownership in replying to the Debtors' objection.

Debtors filed a motion to strike Max Flow's reply on May 15, 2000, on the basis that Max Flow was not a real party in interest, citing the decision of *In re Morgan*, 225 B.R. 290 (Bankr. E.D.N.Y. 1998),[8] *vacated by, In re Nunez*, 2000 WL 655983 (E.D.N.Y. Mar. 17, 2000) ("Because the bankruptcies were terminated; the underlying motions granted or withdrawn; and the bankruptcy court without power to enforce New York State's Judiciary Law; the decision below opinion [sic] served no proper "means" within the framework created by Article III." 2000 WL 655983, *8).[9]

---

[8] The *Morgan* court concluded that mortgage servicing agents do not have a beneficial interest in the outcome of the proceedings, and therefore lack standing. The court also found that representing, through retained counsel, the real party in interest (the secured creditor) in the bankruptcy proceeding, the mortgage servicing agents had engaged in the unauthorized practice of law, aided by the law firms involved. As a result, the judge decided to refer the lawyers and law firms to the Second Department's Grievance Committee for disciplinary action, and referred the loan servicers to the New York State Attorney General.

[9] The mortgage servicing agents were joined in the appeal by *amici curiae* the Federal National Mortgage Association [hereinafter "Fannie Mae"], the Consumer Mortgage Coalition, and the American Financial Services Association who urged that the decision be reversed. No party argued that the decision be upheld. The decision was vacated for the following reasons: 1) A duly authorized agent can commence a legal action and represent its principal with respect to the subject matter of the agency; 2) Bankruptcy courts cannot issue advisory opinions, being bound by Article III, section 2 of the United States Constitution; 2) The principle that federal jurisdiction exists only to adjudicate "cases and controversies" prohibits federal courts from adjudicating cases that

(continued...)

At the hearing to consider the Debtors' objection to Max Flow's

claim on June 13, 2000, Max Flow appeared through counsel. The Bankruptcy

Court admitted as Exhibit 1 to the hearing Debtors' Conformation Order from the

Debtors' 1997 Bankruptcy Case **which allowed the claim identifying the**

**creditor in the same manner identified in the 1999 Bankruptcy Case.**

The Bankruptcy Court issued its order[10] on Debtors' Objection and

Motion to Strike on August 2, 2000. The order[11] sustained the objection to

---

[9](...continued)
have been moot (both underlying bankruptcy cases had been resolved prior to the
decision of the bankruptcy court); 3) Once these controversies were moot the
bankruptcy court lacked authority to issue any decision regarding former
proceedings; 4) The bankruptcy court should not have reached out to decide a
standing issue that could have no effect on the parties or the bankruptcy;
5) Article III courts cannot issue decisions that can later be revised or disregarded
by another branch of government; 6) The judge's finding that New York's
Judiciary Law § 495 was violated, an advisory opinion, is not binding on the
Grievance Committee of the state court in which the Attorney General could
decide to bring an enforcement action; 7) A bankruptcy court does not have
inherent power, under 11 U.S.C. § 105, "to hold parties in civil contempt for
violation of its own orders." *In re Masterwear Corp.,* 229 B.R. 301, 310 (Bankr.
S.D.N.Y. 1999) (citing *In re Ionosphere Clubs, Inc.,* 171 B.R. 18, 21 (S.D.N.Y.
1994); and, 8) The judge's decision on standing, rendered over one year after the
underlying motions had either been granted or withdrawn, certainly cannot be
justified with reference to the contempt power.

[10] The provisions of the order have previously been set out at 1-2.

[11] The order was based on the record that indicated Max Flow was the agent
(continued...)

disallow the claim and granted the motion to strike. *In re O'Dell*, 251 B.R. 602,

626 (Bankr. N.D. Ala. 2000). A separate hearing was held to determine whether

sanctions would be imposed against Max Flow and its prior counsel[12] for their

unauthorized practice of law.

Upon receipt of the order and discovery of incorrect underlying

factual basis for the order (Max Flow was MBNA's agent), Max Flow filed a

motion for reconsideration, accompanied by an affidavit explaining the nature of

its business, its relationships with MBNA and Becket & Lee, and its actual

ownership of the claim at issue on August 14, 2000. Accompanying the motion

was Max Flow's submission that even if it did not own the claim it still had a

pecuniary interest on its contractual obligations with MBNA making it a party in

interest with a right to file and defend "Claim No. 15."

_____

[11](...continued)
of MBNA rather than the owner of the account. Max Flow actually was MBNA's
agent per **Interim Agreement.** The court will later in the opinion discuss the
agency question by which a principal may delegate authority to an agent to handle
legal claims as allowed by the **Interim Agreement.**

[12] Because of Judge Sledge's conclusion that Max Flow's former counsel
had facilitated the unauthorized practice of law, its former counsel filed motions to
withdraw as counsel for Max Flow. The Bankruptcy Court granted the motion to
withdraw filed by James H. Greer, but did not rule on the motion to withdraw filed
by Alane Becket, Alex Barnes, and Becket & Lee.

On September 2, 2000, the Bankruptcy Court heard and orally denied the motion for reconsideration. Unrefuted testimony[13] from **John Garzone**, executive vice president of Max Flow explained that due to accounting policies and charge-off policies account sellers are not always able to sell accounts as soon as they receive bankruptcy notification. Explanations of the **Purchase Agreement** and **Interim Agreement** entered into between Max Flow and MBNA were given. Garzone testified he was unaware of issues in the O'Dell case until being give a copy of Judge Sledge's opinion. Ensuing investigation of the facts indicated that the O'Dell account probably was no longer owned by MBNA. He learned that Max Flow had been the owner of the account since February 1998 as evidenced by a bill of sale.[14] Garzone identified the computer file for the record and pointed out the reference to the O'Dell account within the file. Two days later the Bankruptcy

---

[13] Garzone's testimony regarding ownership of the O'Dell account was not questioned during cross examination. Debtors offered no evidence of their own at the hearing. No evidence was presented that Max Flow intentionally misled anyone, that anyone was misled by Max Flow's proof of claim, that the debtors were confused about their liability regarding the claim, or that any information was intentionally withheld or misrepresented.

[14] The accounts are identified in MBNA's computer file delivered to Max Flow on a monthly basis. Ownership by Max Flow was established 21 months prior to the dismissal of the 1997 Bankruptcy Case on October 26, 1997.

Court issued the written order memorializing the oral order denying the motion for reconsideration.

The Bankruptcy Court concluded that there was no basis to consider the new evidence under the standard of the "newly discovered evidence" standard of Bankruptcy Rule 9024, an adoption of Fed. R. Civ. P. 60(b). Even so, it did consider the evidence at the hearing and concluded that Max Flow did not own the claim.[15] The court refused to hear additional testimony concerning the provisions of the Interim Agreement relative to ownership of the claim by Max Flow, concluding that it had not bought the claim.

Having considered the record before it the court **holds** that Max Flow did not engage in the unauthorized practice of law. It acted with legal and actual authority. As such its conduct is not sanctionable. An agent may conduct the legal affairs of its principal. Max Flow bought the Chapter 13 claims. See **Purchase Agreement**. At the that time Max Flow had equitable title. During the interim it became an agent with interest. Therefore Max Flow, an interested party, can litigate.

_____

[15] The court's conclusion was based on its erroneous interpretation of a provision of the **Interim Agreement**.

It is well established law that an agent may direct the legal affairs of its principal. *Howard v. McCarson,* 215 Ala. 251, 110 So. 296 (Ala. 1926) (A principal may delegate to an agent the authority to handle a legal claim, including the authority to hire and fire attorneys in handling legal proceedings in connection with the claim).   Further, it is well-settled law that corporations, as artificial persons, must delegate the handling of legal matters to its agents. *In re Covenant Financial Group of America, Inc.*, 243 B.R. 450, 457 (Bankr. N.D.Ala. 1999) ("A corporation may act only through its agents.");  *Warwick Development Co., Inc. v. GV Corp.*, 469 S.2d 1270, 1276 (Ala. 1985) ("A corporation can act only through its officers and agents.");  *Home Indem. Co. v. Anders*, 459 So. 2d 836, 840 (Ala. 1984) ("A corporation can act only through its servants, agents, or employees.") (citing *Martin v. Anniston Foundry Co.*, 259 Ala. 633, 68 So 2d 323 (1953)); *Alabama Music Co. v. Nelson*, 282 Ala. 517, 521, 213 So. 2d 250, 253 (1968) ("A corporation in its relations to the public is represented and can act only through its duly authorized servants, agents or employees.") (citing *United States Fire Ins. Co. v. Hodges*, 275 Ala. 243, 154 So. 2d 3).  Not only must a corporation act through its agents, it is under a duty to provide proper defense to legal proceedings

13

brought against the corporation. *Doherty v. Mutual Warehouse Co.*, 245 F.2d 609, 612 (5th Cir. 1957).[16]

In *Matter of King Resources Co.*, 20 B.R. 191, 197 (D.Colo. 1982), proceedings for reorganization of corporations, the court addressed the issue of whether a proof of claim should be allowed.[17]  In ruling, the *King* court turned to 3 Collier on Bankruptcy P 57.18(5); Bankruptcy Rule 10-401(b)(4), set forth below:

> In bankruptcy proceedings,  "a proof of claim must be treated as some evidence.  It is strong enough to carry over a mere formal objection that is, a mere statement that the claim is invalid-and it compels the objector to go forward and produce evidence enough to rebut the claimant's prima facie case.  Yet once this is achieved, it is for the claimant to prove his claim, not for the objector to disprove it."

Circumstances of *King* strongly parallel the circumstances in the case at bar.  The proof of claim was properly filed--prima facie evidence of the validity and amount of the debt under Bankruptcy Rule 10-40(b)(4).  A formal objection was filed.  In *King* the **testimony of William Coffey**, former Executive Vice President of KRC,

---

[16]   *See, Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (Decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding precedent in the Eleventh Circuit, the district courts, and the bankruptcy courts in the circuit.)

[17]  Both parties contended that the other side had not met its burden.

was introduced to show what the books of KRC showed owing to Mallin.  In the instant case at bar **John Garzone**, executive vice president of Max Flow testified that Max Flow had owned the O'Dell account since February 1998.  He presented a bill of sale to that effect.  Both vice presidents testified as to procedures followed in the ordinary course of business.  Following Colorado law (an agent can retain counsel on behalf of his principal) the *King* court held that a corporate officer has implied actual authority to retain attorneys on behalf of the corporation.  *See, Tuttle v. Claflin*, 86 F. 964 (C.C.S.D.N.Y. 1898) (Principal can delegate to a non-lawyer agent the authority to prosecute a patent claim and to employ lawyers for the principal).  Similarly, in *Lake Shore Management Co. v. Blum*, 92 Ill.App.2d 47, 235 N.E.2d 366, 367-68 (1968), the court held that a corporation can not prosecute its own suit except through a licensed attorney.  An agent can institute a suit as plaintiff on behalf of his principal when he employs an attorney at law to file suit and represent him in court.

Max Flow demonstrated with evidence on its motion for reconsideration that it owned the claim at issue.  Even were Max Flow an agent for owner MBNA, Max Flow was authorized by MBNA to represent its interest in the

15

bankruptcy proceedings. **Interim Agreement**.[18] The **Interim Agreement** specifically authorized Max Flow to utilize the services of Becket & Lee LLP. It provided authority for Max Flow to file proofs of claim, file objections to Chapter 13 proceedings at the direction of Becket & Lee, and to file motions to obtain permission of the court to pursue remedies against a non-filing co-debtor.[19]

In responding to the Debtors' objection to the claim, Max Flow did so through licensed counsel. It did not perform activities generally considered the practice of law. The court **holds** that its conduct, and the conduct of its former counsel is not sanctionable. A ruling providing for sanctions is an outrageous abuse of discretion amounting to nothing more than an attempt to terrorize the entire bar. To allow such a ruling to stand would defeat the purpose of Chapter 13 bankruptcy proceedings by which debtors are supposed to pay their debts.

_____

[18] The **Interim Agreement** between Max Flow and MBNA authorized Max Flow to "provide the administrative, collection and legal services to MBNA" with respect to any account referred by MBNA to Max Flow.

[19] The Bankruptcy Court found that Max Flow's only authority was to file proof of claim on behalf on MBNA--an erroneous interpretation of affidavit testimony presented at the objection to claim hearing. The Bankruptcy Court erroneously concluded that Max Flow had no additional authority to act on behalf of MBNA with respect to the claim.

Debtors and their attorneys should not be terrorized into not pursuing their claims. Judge Sledge's reliance on the vacated *Morgan* decision is misplaced. *Nunez*, at 9,[20] held the decision was an advisory opinion in contradiction of Article III of the U.S. Constitution. The *Nunez* court strongly criticized the vacated *Morgan* decision which is inconsistent with case law establishing that agents of creditors may be real parties in interest. Furthermore, *Morgan* has never been followed by any court other than *O'Dell*. Too, Judge Sledge's reliance on *In re Chas. A. Stevens & Co*, 108 B.R. 191 (Bankr. N.D.Ill 1989) (Acts constituting the unauthorized practice of law in *Stevens* were performed by a non-attorney)[21] is misplaced. The attorneys in the instant case were licensed attorneys.

The court further **holds** that the decision of the Bankruptcy Court that Max Flow engaged in the unauthorized practice of law is due to be **REVERSED**.

---

[20] The court concluded that the bankruptcy court's "conclusion regarding the unauthorized practice of law was seriously flawed." Too, the information that would have been presented by the appellants had they been given the opportunity "would surely have resolved the standing question as well as put to rest any colorable claim that the cited parties were engaged in the unauthorized practice of law."

[21] In *Stevens* a non-lawyer agent for a creditor prepared, served, and filed a response to the debtor's objection to claim. Max Flow obtained local and national counsel to represent it in court.

Max Flow was a "real party in interest" and had standing.  Standing requires that a

plaintiff have "a distinct and palpable injury to himself," *Warth v. Seldin*,

422 U.S. 490, 501, 45 L. Ed 2d 343, 357, 96 S.Ct. 2197 (1975),  and "such a

personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues upon which the court so

largely depends for illumination of difficult constitutional questions." *Baker v.*

*Carr*, 369 U.S. 186, 204 (1962), 82 S. Ct. 691, 7 L. Ed.2d 663, 678 (1962).

The "real party in interest" requirement appears in Fed. R. Civ.

P. 17(a),[22] a portion of which is set forth below:

**Real Party in Interest.**  Every action shall be prosecuted in the name of the real part
ground that it is not prosecuted in the name of the real party in interest until a
reasonable time has been allowed after objection for ratification of
commencement of the action by, or joinder, or substitution of, the real party in
interest; and such ratification, joinder, or substitution shall have the same effect as
if the action had been commenced in the name of the real party in interest.

---

[22]  In the bankruptcy concept Rule 17 is designed to insure that one who has
a significant interest in the matter prosecute it. *Mayorsohn Caribbean, Inc. v.*
*Puerto Rice Marine* Mgmt., Inc. 620 F.2d 1, 4 (1st Cir. 1980) (This purpose is to
protect a defendant from facing a subsequent similar action brought by one not a
party to the present proceeding and to insure that any action taken to judgment
will have its proper effect as res judicata.")

The Bankruptcy Code does not define the term "real party in interest,"[23] Congress

having left the definition open so that courts can  determine whether a party ought

to be recognized as having a right to appear in light of the matter at issue and the

factual circumstances before the court.  *In re Amatex*, 755 F.2d 1034, 1041

(3rd Cir. 1985) ("Whether or not future claimants have claims in the technical

bankruptcy sense that can be affected by a reorganization plan, such individuals

clearly have a practical stake[24] in the outcome of the proceedings.");  *Unofficial

Comm. of Zero Coupon Note Holders v. Grand Union Co.*, 179 B.R. 56, 58-59

_____

[23]  Section 1109(b) of the United States Bankruptcy Code identifies those persons who may appear and be heard in a Chapter 11 case:  "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

[24]  A "personal stake" or "practical stake" may be established through a pecuniary interest, a practical stake, or a legally protected interest.  *See In re Wells*, 227 B.R. 553, 559 (Bankr. M.D. Fla. 1998) (A "practical stake" or legally protected interest may establish a personal stake in the outcome of a proceeding); *In re Charter Co.*, 68 B.R. 225, 227 (Bankr. M.D. Fla. 1986) (Courts generally determine that a "party in interest" is "a party who has a pecuniary interest in the estate being administered"); *Unofficial Comm. of Zero Coupon Note Holders*, 179 B.R. 56, 58 (D. Del. 1995) (A party's "practical stake"in the outcome established it as a real party in interest to the proceeding);  *In re James Wilson Assoc.*, 956 F.2d 160, 169 (7th Cir. 1992) (If an individual has a stake in the outcome, there is no objection to standing based on Article III);  *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc.*, 620 F.2d 1, 3 (1st Cir. 1980) ("'Niceties of title' alone do not determine whether one is the real party in interest").

(D.Del 1995) (To obtain an opportunity to be heard the party need only "show a

sufficient stake to require representation"); *In re Riverbend-Oxford Associates*,

114 B.R. 111, 113 (Bankr. D.Md. 1990) ("Real party in interest" is an

"expandable concept depending on the particular factual context in which it is

applied."); *In re Johns-Manville Corp.*, 36 B.R.743, 754 (Bankr. S.D.N.Y. 1984),

*aff'd*, 52 B.R. 940 (S.D.N.Y. 1985) (concept is "elastic and broad"--"one designed

to give a Court great latitude to insure fair representation of all constituencies

impacted in any significant way by a Chapter 11 case.").

      The court **holds** that the Bankruptcy Court abused its discretion in

holding that it did not need to consider Max Flow's evidence submitted at the

motion for reconsideration hearing.  The court further **holds** that when the

Bankruptcy Court did consider the evidence it reached an erroneous holding.  The

**Interim Agreement** not only amounts to an equitable interest it amounts to

equitable title or ownership.  It provides the basis for Max Flow to bring suit.  It

illustrates Max Flow's pecuniary interest, practical stake, and legal interest in the

outcome of the O'Dell claim.

      The holding in *Wadsworth v. Yancy Bros. Co.*, 423 So. 2d 1343

(Ala. 1982), that it is possible for more than one party to be a real party in interest

as to the creditor claim, illustrates an understanding of modern day financing by

which creditors frequently carve up the bundle of rights associated with the claim.

The court correctly held that a debtor has no standing to challenge which entity

appears in court to enforce a claim that the debtor owes. *See Bankers Trust*

*(Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D. Va. 1994) (Both

the lender and the servicer had standing to sue on the mortgage in default even

though the servicer was not the holder of the mortgage.); *In re Tainan*, 48 B.R.

250, 252 (Bankr. E.D. Pa. 1985) (A mortgage servicer was a party in interest for

Rule 17(a)[25] purposes in a stay relief proceeding.)[26]

  As an owner or an agent of MBNA Mac Flow had a pecuniary

interest sufficient to be a real party in interest.  As such it cannot be guilty of

---

[25]  The bankruptcy court described the purpose of Rule 17(a) as protection
for "individuals from harassment of suits by persons who do not have the power to
make final and binding decisions concerning prosecution, compromise and
settlement." An action had to be brought by the person entitled to enforce the
right.

[26]  The court reasoned that because the servicer was authorized by Fannie
Mae to collect the claim secured by the mortgage it was a real party in interest
entitled to relief from the stay.

engaging in the unauthorized practice of law.  Therefore, the holding that its

unauthorized practice of law was sanctionable conduct must be reversed.

The court agrees with appellants' nicely coined phrase [27] that the

court has engaged in  "criminalization of grammar" by insisting on form over

substance by finding that Max Flow had engaged in sanctionable conduct by

identifying itself as "Max Flow On Behalf Of MBNA America N.A. And Its

Assigns" rather than by "MBNA by Max Flow," or "MBNA through Max Flow,"

or "MBNA by means of Max Flow," or "MBNA via Max Flow."  There is nothing

in the record to indicate that Max Flow intended to mislead anyone with its proof

of claim form.  Had its designation been misleading the Bankruptcy Court should

have allowed it to amend the proof of claim form when it made its motion for

reconsideration. *Jenkins v. Pullman Co.*, 96 F.2d 405, 408 (9th Cir. 1938), *cert.*

*granted,* 305 U.S. 583, 59 S. Ct. 83, 83 L. Ed. 368 (1938),  *aff'd,* 305 U.S. 534, 59

S. Ct. 347,

33 L. Ed. 334 (1938) ("It has generally been held that a defective caption, or no

caption at all, is merely a formal defect and not fatal, which may be waived by

answering to the merits.")  *See, Pepper v. Litton*, 308 U.S. 295, 305, 60 S. Ct. 238,

---

[27] "criminalization of grammar"

84 L. Ed. 281 (1939) (Bankruptcy courts have inherent equitable power in overseeing the bankruptcy estate to insure that "substance will not give way to form" and that "technical considerations will not prevent substantial justice from being done."); *In re South Atlantic Fin. Corp.*, 767 F.2d 814, 819 (11ᵗʰ Cir. 1985) (An amendment to a proof of claim is freely allowed where the purpose is to cure a defect in the claim as originally filed.); *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11ᵗʰ Cir. 1985) ("[S]ubstance will not give way to form, ... technical considerations will not prevent substantial justice from being done.") (quoting *Pepper*); *Commonwealth Corp. v. Everhart*, 617 F.2d 415, 420 (5ᵗʰ Cir. 1980) "In a straight bankruptcy proceeding ... an amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on facts set forth in the original claim.").

   The Bankruptcy Court abused its discretion in holding that Max Flow and its former counsel engaged in sanctionable conduct under Bankruptcy Rule 9011. The court's language is set forth below.

> Pursuant to Fed. R. Bankr. P. 9011 and 9020, and in connection with the holding of *In re Chas. A. Stevens & Co.*, 108 B.R. 191 (Bankr. N.D.Ill. 1989), this court finds that the actions of Max Flow and the actions of counsel for Max Flow are sanctionable. Therefore the

> court will issue an order to show cause why sanctions should not be
> awarded, why these matters should not be referred to the United
> States Attorney, the Alabama State Bar Unauthorized Practice of Law
> Committee and the Pennsylvania State Bar Unauthorized Practice of
> Law Committee.

*O'Dell*, 251 B.R. at 626.  Bankruptcy Rule 9011 parallels Rule 11 of the Federal

Rules of Civil Procedure.  It is intended to deter abuses of the judicial system by

allowing for sanctions against those parties asserting claims with no factual or

legal basis at all.  Before imposing its use the court must ask itself whether a

lawyer's conduct complies with "'an objective standard of reasonableness under

the circumstances.'  *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444

(5th Cir. 1992)."  *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994).

A legal position is not sanctionable unless case law clearly establishes

that the position is frivolous. *McKnight v. General Motors Corp.*, 511 U.S. 659,

660, 114 S. Ct. 1826,  128 L.Ed. 655(1994). In the instant case the Bankruptcy

Court based its decision on *Morgan*, later withdrawn and never followed by

another court.  *Morgan* was not the law and has a "chilling effect never intended

by Rule 11.  The *O'Dell* decision has and has had that effect.  Creditors' attorneys

are unable to vigorously advocate their client's positions before Judge Sledge for

fear of being charged with unethical conduct and being sanctioned.[28] An

affirmance of Judge Sledge's decision would amount to an abuse of discretion on

the part of this court. *See FDIC v. Calhoun,* 34 F.3d 1291, 1297 (5th Cir. 1994)

("'A district court would necessarily abuse its discretion if it based its ruling on an

erroneous view of the law or a clearly erroneous assessment of the evidence.'

*Cooter v. Gell,* 496 U.S. at 405, 110 S. Ct. at 2461."[29] *See also, U.S. v. Alexander,*

981 F.2d 250 (5th Cir. 1993) ("[W]here the filing enjoys reasonable factual and

legal support, it is not sanctionable absent 'unusual circumstances.'")

The *O'Dell* decision is a clear abuse of the Bankruptcy Court's power.  The

*O'Dell* decision is an abhorrent aberration of the principles of law on which our

legal system is founded and, therefore, must be **REVERSED**.

> Based on the above the court **HOLDS** the following:

1)      An agent authorized by its principal to pursue and protect the
        interests of the principal's claim can lawfully defend an objection to
        said claim on behalf of the principal.

---

[28] In the case at bar Max Flow's counsel found it necessary to file motions
to withdraw because of inability to represent clients after having been found to
have engaged in unethical and sanctionable conduct.

[29] The full citation for *Cooter* is 496 U.S. 384, 405, 110 S. Ct. 2447, 2461,
110 L. Ed2d 359 (1990).

2)   The Bankruptcy Court erred in its August 3, 2000, order by holding that Max Flow lacked either standing or legal authority to defend a proof of claim it filed on behalf of MBNA and its assigns; Max Flow does have the authority and standing to do so.

3)   Max Flow's conduct in defending the subject proof of claim did not constitute unauthorized practice of law; all of Max Flow's activities were conducted by an attorney.

4)   The Bankruptcy Court erred in its August 3, 2000, order by holding that Max Flow's counsel facilitated Max Flow's engagement in the unauthorized practice of law; counsel did not.

5)   The conduct of Max Flow and its counsel in defending the proof of claim is NOT sanctionable;  it had standing to defend the claim and legal authority to do so.

6)   The Bankruptcy Court erred in its September 4, 2000, memorialization of its September 2, 2000, oral order that it did not need to consider Max Flow's "newly discovered evidence" submitted at its motion for reconsideration hearing.

An order consistent with this opinion is being entered

contemporaneously herewith.

DONE and ORDERED this 4th day of October 2001.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

26